# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID ILLG** | **CIVIL ACTION** |
| **VERSUS** | **No. 21-224** |
| **DO IT BEST CORPORATION, ET AL.** | **SECTION I** |

## ORDER & REASONS

Defendants Do It Best, Corp. ("DIB") and Roy Jones ("Jones") have filed a motion[1] to dismiss each of plaintiff David Illg's ("Illg") claims against them, except for a breach of contract claim asserted against DIB. The defendants argue that dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate because the relevant claims fail as a matter of law. As explained *infra*, the Court denies the motion to dismiss, except as to Illg's claim of fraudulent misrepresentation.[2] And while the Court finds Illg's allegations in support of that claim insufficient, it grants Illg's request for leave to amend his complaint.

This case is about DIB's alleged failure to promptly redeem Illg's preference shares in DIB upon his request. Illg claims this was both in breach of a contract and at odds with express statements made by Jones upon which he detrimentally relied. Illg also asserts claims of (1) conversion, (2) vicarious liability,[3] (3) unjust enrichment,

---

[1] R. Doc. No. 13.
[2] During an April 27, 2021 status conference, the Court indicated that it intended to deny the motion in its entirety. The Court has since reconsidered the merits of the defendants' secondary argument regarding the fraudulent misrepresentation claim.
[3] Presumably DIB's vicarious liability for Jones's conduct.

(4) fraudulent misrepresentation, and (5) negligent misrepresentation.[4] During an April 27, 2021 status conference, counsel for Illg confirmed that the conversion and breach of contract claims are asserted as to DIB only.[5]

## I.

For decades, David Illg owned and operated DMI, LLC d/b/a Jeanfreau Hardware, a hardware store (the "store").[6] For most of that time, he and his store were parties to the "HWI Membership Agreement" (the "agreement") with DIB.[7] Under the agreement, DIB sold its goods to the store and provided it with various related services.[8] "To induce [the store] into signing the [a]greement, and to induce [the store] to remain bound thereunder, [DIB] from time to time furnished [the store]

---

[4] R. Doc. No. 1-2 (state court petition), at 6 ¶ 38. The petition was submitted as an attachment to defendants' notice of removal, but the Court's pincites to particular pages use the petition's pagination.
[5] R. Doc. No. 23.
[6] R. Doc. No. 1-2, at 2 ¶ 6.
[7] *Id.* at 2 ¶ 7. The defendants have provided a copy of the agreement. R. Doc. No 13-2. In his opposition, Illg "object[ed] to the consideration of" the agreement "out of an abundance of caution." R. Doc. No. 18, at 4. Curiously, he does not suggest that it is inauthentic. In fact, much of his opposition to the instant motion is premised on his reading of it—and he cites it extensively. *See, e.g., id.* at 8. Nonetheless, he argues that because he objects to its consideration, the Fifth Circuit's suggestion in *Collins v. Morgan Stanley Dean Witter* that courts may consider "documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [his] claim," is inapplicable. *Id.* at 4; *see* 224 F.3d 496, 498–99 (5th Cir. 2000).

The Court is skeptical of the argument. But because it does not rely on the contract to dismiss any of Illg's claims, it need not resolve the issue.
[8] R. Doc. No. 1-2, at 2 ¶ 9.

with certain preference and common shares in [DIB]."[9]  Only the preference shares (the "shares") are the subject of this litigation.

According to Illg, the agreement gives the store "the right, at any time and for any reason, to discontinue membership in [DIB] and to require [DIB] to repurchase and redeem the [shares] upon request."[10]  It "provides no specific time period within which [DIB] is to pay [the store] the redemption price for [the shares]."[11]  The relevant contractual provision provides that DIB "will . . . subject to such schedule as may be approved from time to time by its directors, redeem [the shares] . . . after [it] is requested to make such repurchases."[12]  But Jones[13] "informed [Illg and the store] on numerous occasions that [Illg] could, at any time, require [DIB] to repurchase and redeem the [shares] upon request, and that payment for the [shares] would be furnished to [Illg] *immediately* upon request."[14]

In 2019, Illg decided to sell his store, and informed DIB of his plans.[15]  He did so in November.[16]  At the same time, Illg informed DIB "that he was terminating [his]

---

[9] *Id.* at 2 ¶ 11.
[10] *Id.* at 2 ¶ 12.
[11] *Id.* at 3 ¶ 14.
[12] R. Doc. No. 13-2, at 2.
[13] Jones is "a territory sales manager employed by [DIB]" and its "representative with respect to [Illg and the store.]"  R. Doc. No. 1-2, at 3 ¶¶ 15–16.
[14] *Id.* at 3 ¶ 17 (emphasis added).
[15] *Id.* at 3 ¶ 19.
[16] *Id.* at 3–4 ¶¶ 21.  At that time, "all of [the store's] deposits and rebates due from [DIB,] rights against [DIB,] and stock and equity interest in [DIB] were transferred and assigned to Illg."  *Id.* at 4 ¶ 22.

membership with [DIB] and requested that [DIB] redeem his [shares] and furnish payment . . . for same."[17]

In March 2020, DIB sent a letter to Illg, informing him that, at his request, his "membership under the [agreement] had been terminated"[18] and that "a timetable for [DIB] to pay [Illg] to redeem [his shares] would be set by [DIB's] Board of Directors at their" board meeting in late April.[19] DIB's next letter, sent in May 2020, advised Illg "that [DIB's] Board of Directors had approved the repurchase of [his] Common and Preference shares in [DIB]," but that the "accumulated Preference shares totaling $367,900.00 . . . [were] scheduled to be repurchased during April 2025."[20]

Illg explains that the March letter "surprised" him, because he "had repeatedly been informed by Defendants that he would receive payment for his [shares] immediately upon request."[21] He adds that "[t]he timetable set forth in [DIB's] May 2020 Letter was directly contrary to the numerous representations" Jones made to Illg.[22]

Illg adds that "[b]ut for the Defendants' false representation to [him], [he] would have terminated the [agreement] long before the Sale and would have taken all acts necessary to redeem his [shares] and obtain the immediate cash value thereof."[23] He explains that, in this way, he and the store "relied to their detriment

---

[17] *Id.* at 4 ¶ 23.
[18] *Id.* at 4 ¶ 24.
[19] *Id.* at 4 ¶ 25.
[20] *Id.* at 4 ¶¶ 27–28 (quotations omitted).
[21] *Id.* at 4 ¶ 26.
[22] *Id.* at 5 ¶ 29.
[23] *Id.* at 5 ¶ 30.

4

on Defendants' representations that [he and the store] could at any time liquidate the [shares] in exchange for their full cash value, without delay."[24]

Illg also argues that DIB's "attempt to delay payment of these funds to [him] for five years—funds to which [DIB] acknowledges and admits [he] is entitled—amounts to a nonconsensual, interest-free loan to [DIB] of [his] money without justification and in direct contravention of . . . Defendants' many representations."[25]

The main thrust of the instant motion is an attack on Illg's detrimental reliance claim. At bottom, the defendants argue that under either Louisiana or Indiana law,[26] "when a written contract exists that governs the alleged breach at issue, . . . a plaintiff cannot claim reliance on purported misrepresentations that contradict the plain language of that governing contract."[27] Because Illg's redemption of his preference shares was governed by an unambiguous, integrated contract, the defendants reason, his claim that he detrimentally relied on Jones's representations to the contrary fails as a matter of law.[28] The defendants add that Illg's inability to

---

[24] *Id.* at 3 ¶ 18.
[25] *Id.* at 6 ¶ 37.
[26] Defendants claim that, while "[t]here is a potential choice-of-law issue in this case with respect" to the tort claims due to a provision in the contract, the Court need not reach it because Indiana and Louisiana law treat the relevant claims the same way. R. Doc. No. 13-1 at 6 n.5 (defendants' memorandum in support of their motion to dismiss). Illg argues that Louisiana law applies. R. Doc. No. 18, 6 n.19. The Court will accept, for purposes of the instant motion, the defendants' invitation to ignore the choice-of-law issue and apply Louisiana cases, as the parties have not adequately briefed the issue.
[27] R. Doc. No. 13-1, at 6.
[28] *Id.* at 1–2.

show that he justifiably relied on Jones's statements also sinks his claims for fraudulent and negligent misrepresentation.[29]

Separately, the defendants argue that Illg's fraudulent misrepresentation claim is not pled with adequate particularity,[30] and that under Indiana law, there is no claim for negligent misrepresentation in this context.[31] The defendants argue that Illg's conversion claim must be dismissed, although they—despite suggesting that the choice-of-law issue need not be addressed—offer different theories under Louisiana[32] law and Indiana[33] law. And they argue that the claim for unjust enrichment fails because it is premised on a relationship that is "controlled by an enforceable contract."[34] Lastly, the defendants argue that, having defeated each tort claim against Jones, they have also eliminated the possibility of DIB being vicariously liable for his actions.[35]

As an initial matter, the Court concludes that the inadequacy of the briefing regarding the choice-of-law issue, the contract's ambiguity (or lack thereof), and the

---

[29] *Id.* at 11–13.
[30] *Id.* at 11.
[31] *Id.* at 12. The defendants, admirably, withdrew this argument in a reply memorandum, noting that it reflected an inaccurate understanding of Indiana law. R. Doc. No. 22, at 7 n.5. The Court appreciates this approach to motion practice.
[32] "[T]he claim for conversion of preference shares concerns incorporeal property that is not susceptible to conversion[.]" R. Doc. No. 13-1, at 10 (citing *BASF Agrochemical Prods. v. Unkel*, No. 05-1478, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006)).
[33] "If . . . the claim is under Indiana law, 'the source of [any] duty toward [Plaintiff] arises from a contract,'" and "'tort law should not interfere' with respect to such a claim." *Id.* (quoting *French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1167 (Ind. Ct. App. 2008)) (alterations in original).
[34] R. Doc. No. 22, at 9 (quoting *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 408 (5th Cir. 2004)).
[35] *Id.*

issue of whether Illg's tort claims 'arise from' the contract, render it unable to fully analyze the defendants' arguments regarding the conversion and unjustified enrichment claims. And because Illg's claims against Jones will not be dismissed at this time, the defendants' argument regarding vicarious liability fails.

As explained *infra*, the Court rejects the defendants' argument that, because of the contract, Illg cannot have detrimentally relied on Jones's statements. However, it agrees with the defendants that Illg has not alleged his fraudulent misrepresentation claim with sufficient particularity, though it grants his request for leave to amend his complaint so that he may adequately do so.

## II.

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint

has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Furthermore, "the Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 6, 2011) (Vance, J.) (citing *Collins*, 224 F.3d at 498). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)) (alteration in original).

### III.

The Court will first address (and reject) the defendants' argument that most of Illg's tort claims fail as a matter of law because of the agreement. It will then address (and accept) the defendants' argument that Illg's fraudulent misrepresentation claim is not alleged with adequate particularity.

> A. *Because the defendants have not demonstrated that the relevant provision was unambiguous, Illg is not barred from claiming that he or the store relied on assertions that contradict defendants' interpretation of the provision.*

"When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a

8

supposed reasonable intention of the parties." *Lobell v. Rosenberg*, 186 So. 3d 83, 89 (La. 2015) (citing *Prejean v. Guillory*, 38 So. 3d 274, 279 (La. 2010)).

But, "a contract is ambiguous, under Louisiana law, 'when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction.'" *Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998) (quoting *Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996)) (cleaned up).

Furthermore, "even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences." *Lobell*, 186 So. 3d at 89 (citations omitted); *see also* La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").[36]

The defendants' primary argument hinges on their claim that "the Agreement . . . expressly provides that any obligation to redeem (and any right of [Illg] to demand redemption of) [the shares] is unambiguously 'subject to such schedule as may be approved from time to time by [DIB's] directors.'"[37] They argue that Louisiana law,

---

[36] Louisiana, like every state, recognizes the principle that courts should construe true ambiguity against the contract's drafter. *See, e.g.*, *Robinson v. Robinson*, 778 So. 2d 1105, 1122 (La. 2001). However, Illg has not argued that the principle should be applied, and the Court need not reach it to resolve the issue.

[37] R. Doc. No. 13-1, at 9 (quoting R. Doc. No. 13-2, at 2). The defendants also argue that the agreement is fully integrated and includes a representation by the store that DIB has not made any representations at odds with the written agreement. *Id.*

9

therefore, prohibits Illg from claiming that he relied on any assertions that contradicted that provision (*i.e.*, Jones's assurances that he could redeem the shares immediately).[38]

According to Illg, the motion "is predicated upon the erroneous assertion that the [agreement] granted [DIB] unfettered discretion to withhold payment for its customers' preference shares for as long as [it] saw fit."[39] While he acknowledges that the agreement "provides that such redemption shall be subject to such schedule as may be approved from time to time by [DIB's] directors," he argues that this "does not set forth a definitive time frame in which [DIB] must act."[40] "Because the [agreement] contains no contrary provision regarding the specific time period" for performance, he reasons, "it was not unreasonable for [him] to rely on the Defendants' representations regarding same."[41]

---

Because the Court finds the relevant provision to be ambiguous, it need not reach these latter arguments. The Court does note, though, that any representation made by the store at the time it entered into the agreement cannot conceivably cover representations made by DIB years later that were made in an effort to induce the store not to terminate the agreement (as opposed to representations made by DIB to induce the store to enter into the agreement in the first place).

[38] *Id.* (citing *Caplan v. Ochsner Clinic, L.L.C.*, 799 F. Supp. 2d 648, 653 (E.D. La. 2011) (Fallon, J.)). As noted *supra*, the defendants argue that this logic also dooms Illg's fraudulent and negligent misrepresentation claims. Because, as explained *infra*, the Court rejects the premise of the argument, it will not address its application to those claims further.

[39] R. Doc. No. 18, at 7.

[40] *Id.* at 8 (quotation omitted). He goes on to argue that Louisiana law and general principles of contract law dictate that, given the absence of a specific time for performance, DIB was required to perform "within a reasonable time," and that courts typically think of 'reasonable time' as a matter of "months rather than years." *Id.* (quotations omitted). As explained *infra*, the Court need not reach this argument.

[41] *Id.* at 9.

10

In reply, the defendants cling to their argument that, assuming Jones represented to Illg that he could redeem the shares immediately, "without regard to any schedule or director action . . . [that representation was] directly at odds with the written language" of the agreement and, therefore, cannot support a detrimental reliance claim.[42]

"Whether a party reasonably relied on a representation is usually a question of fact." *Caplan*, 799 F. Supp. 3d at 656 (citing *Bethea*, 376 F.3d at 403). But *Caplan* (the principal Louisiana-law case upon which the defendants rely) and the cases it interpreted recognize that an *unambiguous* contractual provision may bar a detrimental reliance claim premised on a representation at odds with the relevant provision. *See id.* at 656–57 (gathering cases). And in the context of an *unambiguous* contractual provision, the rule articulated by the defendants makes sense.

But the provision at issue here is not unambiguous. It is true that the plain text of the agreement is perhaps most naturally read as suggesting that redemption of preference shares can happen only at such time as DIB's Board of Directors sees fit. But it is not obvious that the reference to a schedule set by DIB's Board itself sets

---

[42] R. Doc. No. 22, at 3. Incidentally, the Court does not read Illg's petition to allege that Jones claimed no director action was necessary to effectuate redemption. Nor does the Court find it obvious that 'immediate,' as Illg used it in his petition, is synonymous with 'instantaneous,' as the defendants imply, rather than, say, 'promptly.' If it did, that would mean Illg is alleging he could snap his fingers and check his bank account. How would that work? The Court notes that dictionary definitions vary. *See, e.g.*, *Immediate*, *Black's Law Dictionary* (6th ed. 1990) (explaining that "the word, without any very precise signification, denotes that action . . . must be taken either instantly or without any considerable loss of time" but also offering as a definition "[a] reasonable time in view of particular facts and circumstances of case under consideration").

11

a time for performance. The Court finds Illg's interpretation of the provision—that it sets a method for performance but is silent as to the exact time—just as plausible.

Furthermore, applying DIB's interpretation to the provision would yield the most absurd of results. After all, DIB argues that the reference to payment upon a schedule to be determined by its board of directors means that the agreement allows DIB to set the time for performance—say in April 2025. Assume that's right. Couldn't DIB just as easily 'schedule' payment for April 2125? For April 9999? DIB identifies no limit to the principle. Those results would effectively deprive the store of the benefit of its bargain and would, of course, be absurd. Simply put, DIB's argument proves too much.

The Court need not interpret the provision—or identify an appropriate gap filler—to rule on the instant motion. Remember, the defendants argue that an *unambiguous* contractual provision would bar Illg's claims. That may be true, but it is irrelevant. The provision *was* ambiguous. For that reason, dismissal of the relevant claims at this stage is inappropriate.

> B. *Because Illg has not alleged the time and place of Jones's misrepresentations, the Court must dismiss that claim—though it grants him leave to amend.*

The defendants are correct, however, that the petition is inadequate to satisfy Rule 9(b)'s requirement of particularity in pleading, which is consistently applied to fraudulent misrepresentation claims. The Fifth Circuit applies "Rule 9(b) to fraud complaints with 'bite' and 'without apology,'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*,

12

112 F.3d 175, 178 (5th Cir. 1997)). While it is true that "Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading," *id.* at 186, and "does 'not reflect a subscription to fact pleading,'" *id.* (quoting *Williams*, 112 F.3d at 178), it does "require[] . . . simple, concise, and direct allegations of the circumstances constituting fraud." *Id.* (quotations omitted).

The Fifth Circuit requires "plaintiff[s] to plead 'the time, place and contents of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" *Id.* (quoting *United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999)) (first alteration added, second in original).

Illg alleges that Jones, DIB's sales manager, "informed [him] on numerous occasions that [he and his hardware store] could, at any time, require [DIB] to repurchase and redeem the [shares] upon request, and that payment for the [shares] would be furnished to [him] immediately upon request."[43] The petition does not allege the specific time(s) Jones made any such statement—or where he made it. That appears to fall short of Rule 9(b)'s requirements.

In his opposition to the motion, Illg cites three district court cases for the premise that it is sufficient to allege "the context in which [the fraudulent statements] were made."[44] Two of the cases are distinguishable because, in the particular context of the case, the allegations were detailed enough to make clear generally when and

---

[43] R. Doc. No. 1-2, at 3 ¶ 17.
[44] R. Doc. No. 18, at 13–14.

13

where the statements were made. *See Jassby v. Extreme Motor Sports of New Orleans, LLC*, No. 06-5901, 2006 WL 3844996, at *2 (E.D. La. Dec. 29, 2006) ("The complaint . . . specifies that the allegedly fraudulent misrepresentation was made during the contract negotiations which culminated in the January 19, 2005 contract[.]"); *Carne v. Dunn*, No. 99-2776, 2000 WL 1134394, at *2, *2 n.1 (E.D. La. Aug. 10, 2000) (noting that the plaintiffs' RICO statement and complaint "allege[d] numerous statements made by all defendants" and that the RICO statement "provide[d] the plaintiffs' claims of fraud in even more detail than their complaint"). The third case addressed claims of "passive fraud." *Sarrat v. Univar U.S.A., Inc.*, No. 14-1017, 2014 WL 3588849, at *2 (E.D. La. July 18, 2014). Passive fraud, by its nature, does not occur at any particular time and place. Indeed, as *Sarrat* noted, Louisiana courts evaluating a passive fraud claim require a showing of only "the general time period during which the fraudulent conduct occurred." *Id.*

Neither of those circumstances is present here. Illg's argument is that Jones made specific fraudulent statements, which were presumably made at specific times and places—not passive fraud. For that reason, Illg's fraudulent misrepresentation claim must be dismissed for failure to state a claim. However, nothing about that deficiency suggests that Illg could not successfully allege the claim in an amended complaint. And Federal Rule of Civil Procedure 15(a)(2) makes clear that "court[s] should freely give leave [to amend] when justice so requires." The Court, therefore, will grant Illg's request for an opportunity to amend his complaint to adequately allege the claim.

14

## IV.

For the reasons explained *supra*,

**IT IS ORDERED** that the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Illg shall file an amended complaint adequately alleging a claim of fraudulent misrepresentation no later than **MAY 20, 2021**; failure to do so may result in dismissal with prejudice of that claim. In all other respects, the motion is denied.

New Orleans, Louisiana, May 6, 2021.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**